63 So.2d 426

Succession of MUNTZ.

No. 40736.

Feb. 16, 1953.

Wilkinson & Wilkinson, James Wilkinson, III, New Orleans, for appellants.

Baldwin, Haspel & Molony, Robert R. Rainold, New Orleans, for appellees.

PONDER, Justice.

This is an appeal from a judgment annulling the purported last will and testa-

ment of Mrs. Katie Muntz Argus and ordering the sale of the real estate belonging to the succession.

Mrs. Katie Muntz, surviving wife of John J. Argus, who died on December 2, 1949, was survived by four children, namely, Loretta A. Argus, John Edward Argus, Frank Argus, and Mrs. Rebecca E. Argus Scott. Upon their petition, Loretta A. Argus, and John Edward Argus, were appointed co-administrators of the succession, having alleged that the decedent had died intestate. An inventory was taken of the effects of the succession which listed the only property belonging to the succession as being a piece of real estate appraised at the value of $18,000. The co-administrators petitioned the court to sell the property at public auction to pay the debts of the succession. Frank Argus, and Mrs. Rebecca E. Argus Scott, who had lived with the decedent until her death, opposed the sale, alleging that the decedent had left a last will and testament in which she disinherited the co-administrators and named opponents as her only heirs. The opponents prayed for the probation of the will and the denial of the sale. The lower court ordered proof of the will and set a date for a hearing. At the conclusion of the hearing, the lower court concluded that the will was null and refused to probate it and ordered the sale of the property at public auction. The trial judge, in his reasons for judgment, states:

"In the court's opinion the evidence shows that a portion of the body of the will was over-written by someone other than decedent. A reference to the signature and date, and to the over-written portion of the will, causes the court to conclude that the signature and the date were written with the same kind of ink, and by the same person who over-wrote the portion of decedent's will, and that the signature and date are not in the handwriting of decedent. Furthermore, the date of the will is uncertain, and seems to fall under the opinion and decree of the Supreme Court of Louisiana in the matter entitled, Succession of Buck, 208 La. 556, 23 So.2d 215. It is clear to the Court that, in the date of the will, the 6 is written over the 9. In the court's opinion the evidence preponderates to the effect that the said will was not entirely written, dated and signed by the decedent, * * *".

The will is olographic in form and is written on four pages of paper. The date on the will appears to have been first written in blue ink as being "12–19–49" and later written over or superimposed in black ink to read "12–19–46." The last six lines of the will were written first in blue ink and then traced over with black ink which appears to be in an entirely different handwriting. The superimposed date of the will is also in a different handwriting than that of the testatrix. The purported signature of the decedent and the three witnesses are written on a piece of paper of

different texture and pasted at the bottom of the last page of the will. The signature to the will is not that of the decedent. One of the persons whose signature appears on the will as a witness did not testify at the hearing because he was in the Armed Services in the Pacific. Interrogatories were prepared and forwarded to him which were not answered. His father testified that his son had written him saying that he did not want to get "mixed up in it." The testimony of the other two witnesses to the will is extremely contradictory. While they testified that they saw the decedent sign the will, their testimony varied so as to the time and circumstances that the lower court did not consider them worthy of belief. One of these witnesses when confronted with a prior contradictory statement, answered: "I wasn't supposed to tell you the truth, not under oath." Two police officers testified that they were called to investigate the death of decedent and, upon arriving in the bedroom where decedent was lying, saw that Frank Argus and Mrs. Rebecca Scott were present.

They testified that while making their report they heard Frank Argus and Mrs. Scott talking about whether or not their mother had left a will and both stated they heard Frank Argus say "she didn't *finish* it" or "she didn't *sign* it" because she was so "hard-headed." They testified that they were uncertain as to whether the expression used was "finish" or "sign" but they were impressed by the complete lack of grief on the part of Frank Argus and Mrs. Scott, the ill remarks they made about their sister and their conversation as to who would inherit the property.

Gilbert J. Fortier, Jr. testified as a handwriting expert. He stated that he had analysed handwritings for the United States Bureau of Internal Revenue in regard to questioned documents and also for the New Orleans Police Department and for many attorneys. He said that he maintained a laboratory for that purpose. His testimony is to the effect that the last six lines of the will were overwritten or traced over and that the overwriting, date and signature were written in an ink different from that used in the body of the will; that the extension bearing the purported signature of the decedent was pasted on the fourth page of the will after the will was written; that the date "49" was written first, and the "9" was later changed to "6"; that the body of the will was in the handwriting of Mrs. Katie Muntz Argus; and that the overwriting, date and signature are not in the handwriting of Mrs. Argus. He also testified that the extension pasted on the will with the signatures of the decedent and witnesses is of a weave different from the paper used in the main part of the will.

Article 1588 of the LSA–Civil Code:

"The olographic testament is that which is written by the testator himself. In order to be valid, it must be

entirely written, dated and signed by the hand of the testator. It is subject to no other form, and may be made anywhere, even out of the State."
Article 1655 of the LSA–Civil Code:

"The olographic testament shall be opened, if it be sealed and it must be acknowledged and proved by the declaration of two credible persons, who must attest that they recognize the testament as being entirely written, dated and signed in the testator's handwriting. The judge shall interrogate the witnesses under oath touching their knowledge of the testator's handwriting and signature and shall satisfy himself that they are familiar therewith making mention of the whole in his proces verbal thereof." (As amended by Acts 1896, No. 119).

 The principal attack on the will is that it was not written, dated and signed by the decedent. The evidence indisputably shows that the surcharged date, the overwriting in the last six lines of the will and the purported signature of the testatrix are in a different handwriting than that of the testatrix. A mere examination of the will also reveals that this is a fact. Furthermore it is apparent that the "g" in the word "signed" on the last line of the will was not complete but the tracing with black ink is carefully completed on the pasted portion of the will which contains the purported signature of the decedent. This is also true with reference to the word "written" which is hyphenated and the hyphen does not extend to the part of the paper that is pasted to the will.

In the Succession of Buck, 208 La. 556, 23 So.2d 215, it was held that a date surcharged or in a handwriting other than that of the testator rendered the will null. The present case is much stronger than the Buck case because not only is the date surcharged by another person, thus making the date uncertain, but the last six lines of the will are also surcharged in the handwriting of another and the signature is not that of the testatrix. The above referred to articles of the LSA–Civil Code are mandatory. An olographic will to be valid must be entirely written, dated and signed by the testator or the testatrix, otherwise the will is null. The evidence and an examination of the will convinces us that the will has been tampered with and was not entirely written, dated and signed by the testatrix as required by law.

For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.

FOURNET, C. J., absent.